UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS DAVID GARCIA-AYALA, | No. 2:25-cv-02070-DJC-JDP |
| Petitioner, | |
| v. | ORDER |
| TONYA ANDREWS, et al., | |
| Defendants. | |

Pending before the Court is Petitioner's Motion for Temporary Restraining Order. Petitioner filed a Writ of Habeas Corpus and Motion for Temporary Restraining Order against Defendants, the Warden of Golden State Annex Detention Center Tonya Andrews, Field Office Director for ICE Moises Becerra, Assistant Field Office Director for ICE Alexander Pham, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi. Petitioner was released from DHS custody in February 2023 but in June 2025 was rearrested and re-detained by ICE agents during a routine check in. Petitioner now requests that this Court (1) grant his immediate release from detention (2) prohibit his transfer out of this Court's jurisdiction and removal from the United States until further order from this Court and (3) not allow his re-detention until further order of this Court. For the reasons

discussed below, the Court GRANTS Petitioner's Motion for Temporary Restraining Order.

## BACKGROUND

Petitioner fled to the United States from his home country of El Salvador to escape increasing forms of harassment and violence from the MS-13 gang, a corrupt police officer, and the government of El Salvador. (*See* TRO (ECF No. 4) at 2–3.) Petitioner entered the United States on or around July 13, 2022, without inspection and was apprehended near the border, and processed for expedited removal proceedings under 8 U.S.C. § 1225(b)(1). (*Id.* at 3,5.) Petitioner was then referred for a Credible Fear Interview with the United States Citizenship and Immigration Services and received a positive credible fear finding. (*See* TRO at 3; ECF No. 11-1 ¶ 7.)

Petitioner's removal hearing took place in February 2023, where an Immigration Judge found him ineligible for asylum or withholding of removal, but held that Petitioner was more likely than not to experience torture or death if returned to El Salvador. (TRO at 3; ECF No. 4-2, Ex. B at 10–11.) Thus, the Immigration Judge granted Petitioner a Deferral of Removal under the Convention Against Torture. (*Id.*) That same month, apparently determining that he was neither a danger to the community nor a flight risk, DHS released him from custody on an Order of Supervision. (TRO at 3.; ECF No. 4-1 ¶ 5.) Petitioner appealed the Immigration Judge's decision, and his appeal is pending before the Board of Immigration Appeals. (TRO at 3,9.)

Petitioner remained out of custody for 28 months, until June 25, 2025. (TRO at 1; ECF No. 4-2, Ex. A.) On this date, Petitioner attended a check in, as was required by his Order of Supervision, where ICE agents rearrested and re-detained him. (TRO at 3–4.) Petitioner alleges that he had not violated his Order of Supervision and had attended every single appointment since his release in 2023. (*Id.*) As far as Petitioner knows, there is no final order of removal against him (TRO at 4), and the Respondent has not alleged that the government has in fact provided him with an opportunity to

respond to the reasons for revoking his release.

Since his release from DHS custody in February 2023, Petitioner has had no criminal record and has been employed in the construction industry. (TRO at 1,9; ECF No. 4-2, Ex. F ¶¶ 1, 3-5.) He maintains consistent contact with family, friends, and his community. (TRO at 3.) Petitioner also contributes significant financial support to his family in the United States. (*Id.*) Further, he has complied with his Order of Supervision and attended all of his appointments over the last two years. (*Id.* at 3-4.)

Petitioner currently remains in ICE custody at the Golden State Annex Detention Center without bond. (*Id.* at 4.) It has now been over one month since his re-detention. In that time, Petitioner has not received a hearing to determine whether he now presents a danger to the community or a risk of flight. (*Id.*) Petitioner is further concerned that he may be removed or repatriated to a third country before receiving an opportunity to apply for withholding of removal or protection under the Convention Against Torture as to such country. (*Id.*)

Petitioner filed a Writ of Habeas Corpus under 28 U.S.C. § 2241 in late July 2025 (ECF No. 1) and filed the instant Motion for Temporary Restraining Order a few days later seeking immediate release from detention and an order preventing Respondents from removing him to any third country without an opportunity to challenge such removal. The Respondents filed an Opposition (Opp'n (ECF No. 11)) and Petitioner Replied (Reply (ECF No. 12)). The Court held a hearing and ordered the matter submitted.

## **LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially" similar. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def.*

*Council, Inc.,* 555 U.S. 7, 20 (2008).  Where a plaintiff can show that there are serious questions going to the merits, then a preliminary injunction may still be issued if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied.  *Friends of the Wild Swan v. Weber,* 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## DISCUSSION

The Court finds that issuance of a temporary restraining order is justified here because "serious questions going to the merits" exist and the balance of hardships tips sharply toward the plaintiff.  *See All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134–35 (9th Cir. 2011).

### I. Likelihood of Success on the Merits

Petitioner argues that he is entitled to protection against removal to an undesignated third country.  (TRO at 13.)  Respondents do not oppose Petitioner's request for this relief in their Opposition.  Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const., amend. V.  The due process guarantee extends to deportation proceedings.  *Ortega v. Kaiser,* No. 4:25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (citing *Torres-Aguilar v. I.N.S.,* 246 F.3d 1267, 1270 (9th Cir. 2001) (citation omitted).)  As such, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."  *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge,* 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.,* 132 F.3d 405, 408 (7th Cir. 1998)).  "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country."  *Ortega,* 2025 WL 1771438, at *3 (citing *Najjar v. Lunch,* 630 Fed. App'x 724 (9th Cir. 2016)).

1    Here, it appears that no party designated a country for removal other than El
2 Salvador.  Additionally, an Immigration Judge ordered Petitioner's removal to El
3 Salvador be deferred under the CAT.  There are therefore no countries to which
4 Petitioner could currently be removed without first being afforded notice and
5 opportunity to be heard on a fear-based claim as to that country.  Thus, Petitioner has
6 shown that there is a serious question on the merits of Petitioner's third country
7 removal claim.  *See e.g.*, *Ortega,* 2025 WL 1771438, at *3 (finding a serious question
8 as to the merits of the noncitizen petitioner's claim where an Immigration Judge
9 ordered his removal to El Salvador deferred under the CAT and no other country had
10 yet been designated).  As stated above, Respondents did not oppose relief on this
11 basis in their briefing or at oral argument.
12    Petitioner next contends that he is entitled to immediate release because DHS
13 terminated his parole without proper process under the Immigration and Nationality
14 Act and its regulations, and in violation of the Due Process Clause of the Fifth
15 Amendment to the United States Constitution. (*See* TRO at 8–9.)  Respondents argue
16 that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1), which is constitutionally
17 sound and mandates the detention of noncitizens, such as Petitioner, while
18 proceedings are pending. (*See* Opp'n at 4.)  Respondents also argue that Petitioner's
19 release from DHS custody was not parole and constitutes a lowered liberty interest.
20 (*Id.* at 5–6.)
21    "Freedom from imprisonment – from government custody, detention, or other
22 forms of physical restraint – lies at the heart of the liberty that the [Due Process]
23 Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) (citation omitted).
24 Several courts, including this Court, have recognized that individuals released from
25 immigration custody for longstanding periods of time have a liberty interest in their
26 continued liberty.  *See Doe v. Becerra,* ---- F. Supp. 3d ----, 2025 WL 691664, at *4-5
27 (E.D. Cal. 2025) (analyzing the liberty interest of a noncitizen initially detained under
28 section 1225(b)(1) and then released for five years prior to his re-detention); *Galindo*

*Arzate v. Andrews,* No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025) (finding that the petitioner had a protected liberty interest in his release from immigration custody); *Pinchi v. Noem,* No. 5:25-cv-05632-PCP, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025) (collecting cases recognizing a protectable liberty interest in remaining out of custody on bond). Here, Petitioner was initially detained pursuant to section 1225(b)(1). That said, DHS released him from their custody in February 2023, apparently because he was not considered a flight risk or danger to the community. He remained out of custody until June 2025. Petitioner has therefore demonstrated a liberty interest that must be afforded some process if revoked by the government.

Given Petitioner's liberty interest, the Court applies the framework outlined in *Mathews v. Eldridge* to determine what process is due. *See Doe,* 2025 WL 691664, at *5. *Mathews* considers three factors: (1) "the private interest that will be affected by the official action[,]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335.

Here, Petitioner has a substantial interest in maintaining his out-of-custody status. Petitioner had been released for over two years prior to his re-detention. The Court recognizes that in *Doe v. Becerra*, an earlier decision issued by this Court, the noncitizen petitioner had been released from custody for over five years. *See* 2025 WL 691664, at *1. Although the length of time here is shorter than in *Doe*, other district courts have granted immediate release pending a hearing in front of a neutral decisionmaker where noncitizen petitioners were released from custody for similar, or even shorter, time periods. *See Pinchi,* 2025 WL 1853763, at *1 (granting immediate release where petitioner-plaintiff had been released from custody for approximately two years); *Singh v. Andrews,* No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *1

(E.D. Cal. July 11, 2025) (granting immediate release where petitioner had remained out of custody for over seventeen months). Further, that Petitioner appears to have established meaningful ties to his community and with his family and friends creates an even more powerful interest for Petitioner in his continued liberty.

There is also a high risk of erroneous deprivation. Petitioner alleges that he was initially released because DHS determined that he was not a flight risk or danger to the public. Respondents make no argument in their briefing that <u>any</u> changed circumstances exist that would indicate that Petitioner is now a danger to the community or a flight risk. The Court expresses no opinion on whether a neutral decisionmaker may ultimately make that determination. But at this stage, the lack of new information as to whether changed circumstances exist warrant procedural safeguards.

Finally, the Government's interest in re-detaining Petitioner without a hearing is low. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe,* 2025 WL 691664, at *6 (citations omitted). Moreover, Petitioner has consistently appeared for his immigration hearings for more than two years and has not violated the terms of his Order of Supervision[1]. *See Pinchi,* 2025 WL 1853763, at *2 (finding the government had a decreased interest where the petitioner had appeared for [his] immigration hearings).

Petitioner has therefore shown that serious questions exist as to the on the merits of his claims.

**II.     Irreparable Harm**

Next, the Court finds that Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v.*

---

[1] The Respondents briefly state in their Opposition that Petitioner "has potential administrative remedies" at his disposal and thus fails to show a likelihood of success on the merits. (Opp'n at 4.) The Respondents do not elaborate on what these mechanisms are and thus the Court cannot assess whether they are adequate.

*Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation and quotation omitted). Additionally, "[t]he Ninth Circuit has recognized irreparable harms imposed on anyone subject to immigration detention, including the economic burdens imposed on detainees and their families as a result of detention. . . ." *Diaz v. Kaiser,* No. 3:25-cv-05071-TLT, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Hernandez v. Sessions,* 872 F.3d 976, 995 (9th Cir. 2017) (quotations removed)). Moreover, Petitioner would face irreparable harm from removal to a third country. *See A.A.R.P. v. Trump,* 145 S. Ct. 1364, 1367 (2025) (stating that detainees with pending habeas petitions facing removal under the Alien Enemies Act faced "an imminent threat of severe, irreparable harm").

Here, Petitioner remained out of custody for over two years without any violation of his Order of Supervision and has now been rearrested without an opportunity to be heard by a neutral decisionmaker as to whether his detention is warranted. Without such review, Petitioner may remain indefinitely in custody until a final decision is reached in his immigration case and potentially beyond given the Immigration Judge's ruling on the CAT claims. Petitioner also states that his family members depend on him for support, which he cannot provide while detained. Given the violation of the Petitioner's due process rights, and the economic burden he and his family are facing, the Court finds that the irreparable harm requirement is met.

### III.   Balance of the Equities and Public Interest

The final two *Winter* factors, the balance of the equities and the public interest, merge where the government is the nonmoving party. *Baird,* 81 F.4th at 1040 (citation omitted). Without granting Petitioner the requested injunctive relief, Petitioner faces further deprivation of his liberty. The comparative harm potentially imposed on the Respondents are minimal – at most a delay in detaining Petitioner upon showing that his re-detention is warranted. Additionally, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC v. U.S. Marshals Serv.,* 977 F.3d 817, 838 (9th Cir. 2020) (citation

omitted). Thus, this Court finds that the final two *Winter* factors, particularly the balance of the equities, tip sharply in Petitioner's favor.

### IV. Form of Injunctive Relief

Respondents argue that even if this Court concludes that Petitioner is entitled to some relief, he is at most entitled to an administrative hearing and not release from detention. (Opp'n at 6.) Respondent cites several cases to support their argument, but the Court does not find them applicable to the circumstances here. First, *Demore v. Kim* discussed a challenge to the mandatory detention of noncitizens who had committed certain crimes, including aggravated felonies. 538 U.S. 510, 517, 523, 527–30. Here, the concerns outlined in *Demore* that justified denying bail due to concerns about reoffending or absconding do not seem to apply here because DHS determined that Petitioner was not a danger to the community or a flight risk. *See id.*, at 518–20.. Additionally, Respondents cite to the Ninth Circuit's decision in *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008), where a noncitizen had been taken into custody under 8 U.S.C. § 1226(a). But *Prieto-Romero* did not involve circumstances where the petitioner was previously released from DHS custody and then had his release terminated. *See id.* at 1056 (stating that petitioner "ha[d] remained in the continuous custody of the federal government"). As such, that case did not involve discussion of whether a petitioner was entitled to a pre-deprivation hearing similar to the circumstances at issue here.

Instead, the Court finds that to "preserve the status quo" the proper remedy in this case is to return to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (citing *GoTo.com Inc., v. Walt Disney Co.,* 202 F.3d 1199, 1210 (9th Cir. 2000) (citation omitted)). That would be the moment prior to Petitioner's detention. As a result, the Court joins several other district courts who granted immediate release to preserve the status quo. *See e.g.*, *Singh,* 2025 WL 1918679, at *10; *Pinchi,* 2025 WL 1853763,

at *3 (collecting cases also granting immediate release pending a hearing in front of a neutral decisionmaker)).

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Petitioner's Motion for Temporary Restraining Order (ECF No. 4) is GRANTED so as to preserve the status quo.

1. Respondents are ORDERED to immediately release Petitioner from Respondents' custody and are ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decision maker.  Further, the Respondents are ENJOINED AND RESTRAINED from transferring Petitioner out of this Court's jurisdiction or removing him from the United States without notice and a hearing.  This Order will remain in effect until Friday, August 22, 2025 at 5:00 p.m.
2. Respondents shall file a status report confirming Petitioner's release by Monday, August 11, 2025 at 10:00 a.m.
3. Respondents are ORDERED TO SHOW CAUSE why a Preliminary Injunction should not issue on the same terms as this Temporary Restraining Order. Respondents shall file a supplemental opposition no later than August 14, 2025 at 5:00 p.m.  Petitioners shall file a supplemental reply no later than August 20, 2025 at 5:00 p.m.  A hearing on the Preliminary Injunction and Order to Show cause is SET for 10:00 am on Friday, August 22, 2025 in Courtroom 7 before the Honorable Daniel J. Calabretta.

IT IS SO ORDERED.

Dated:  __**August 8, 2025**__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE